UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
JUSTIN BARNHILL and RODNEY BARNHILL,                    Civil Action No.:

                    Plaintiffs,

        -against-                    **COMPLAINT**

DIAMOND SECURITY SERVICES, LTD.,
KIEWIT CORPORATION,                         **JURY TRIAL REQUESTED**
J.F. SHEA CONSTRUCTION, INC.,
CLAY ABIOLA, and PATRICK G. LEWIS,

                    Defendants.
---------------------------------------------------------------------------X

Plaintiffs JUSTIN BARNHILL and RODNEY BARNHILL ("Plaintiffs"), by their attorneys, Law Offices of Yale Pollack, P.C., as and for their Complaint against Defendants DIAMOND SECURITY SERVICES, LTD., KIEWIT CORPORATION, J.F. SHEA CONSTRUCTION, INC., CLAY ABIOLA and PATRICK G. LEWIS (collectively "Defendants"), allege as follows:

## NATURE OF ACTION

1.     Plaintiffs bring this action to remedy violations of the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et seq.* (the "FLSA"). Plaintiffs seek unpaid wages, liquidated damages, reasonable attorneys' fees and costs, and all other appropriate legal and equitable relief, pursuant to 29 U.S.C. §§216(b) and 217, and other applicable federal law.

2.     Plaintiffs also bring this action to remedy violations of New York State Labor Law, including New York Labor Law §§190 *et seq.*, §§650 et seq. (the "NYLL"), and 12 N.Y.C.R.R. §142-2.2. Plaintiffs seek unpaid wages, statutory damages, pre- and post- judgment interest, reasonable attorneys' fees and costs, liquidated damages and other damages, and all other appropriate legal and equitable relief, pursuant to NYLL §§198, 663.

3.    Plaintiffs also bring this action to address Defendants' retaliation against them under the FLSA and NYLL when complaining about the illegal activities regarding pay, resulting in adverse employment actions, for which they seek unpaid wages, compensatory damages, interest, reasonable attorneys' fees and costs, liquidated damages and other damages, and all other appropriate legal and equitable relief, pursuant to the FLSA and NYLL

## JURISDICTION AND VENUE

4.    Jurisdiction of this Court over Plaintiffs' FLSA claims is invoked pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.    Jurisdiction of this Court over Plaintiffs' NYLL and retaliation claims is invoked pursuant to 28 U.S.C. § 1367(a), as those claims are so related to Plaintiffs' FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this District and Defendants reside and/or transact business within this District.

## PARTIES

7.    Plaintiff Justin Barnhill ("Justin") is an individual who resides in the State of New York.

8.    Plaintiff Rodney Barnhill ("Rodney") is an individual who resides in the State of New York.

9.    Upon information and belief, Defendant Diamond Security Services, Ltd. ("DSS") is a domestic corporation authorized to do business in the State of New York.

10.    Upon information and belief, Defendant Kiewit Corporation ("Kiewit") is a foreign corporation authorized to do business in the State of New York.

2

11.     Upon information and belief, Defendant J.F. Shea Construction, Inc. ("Shea") is a foreign corporation authorized to do business in the State of New York.

12.     Upon information and belief, Kiewit and Shea entered int a partnership agreement and/or joint venture to construct the Delaware Aqueduct Bypass Project, where Plaintiffs worked as set forth herein.

13.     Upon information and belief, at all relevant times mentioned herein, Defendant Clay Abiola ("Abiola") was and continues to be an owner, officer, director, shareholder and/or agent of DSS.

14.     Upon information and belief, at all relevant times mentioned herein, Defendant Patrick G. Lewis ("Lewis") was and continues to be an owner, officer, director, shareholder and/or agent of DSS.

15.     At all relevant times mentioned herein, Abiola and Lewis (collectively the "Individual Defendants") had the power to hire, fire, and control the wages and working conditions of Plaintiffs.

16.     The Individual Defendants had authority to, and did in fact, exercise operational control over DSS.

17.     The Individual Defendants controlled significant business functions of DSS and acted on behalf of and in the interest of DSS in devising, directing, implementing and supervising the wage and hour practices and policies relating to its employees, including Plaintiffs.

18.     The Individual Defendants participated in determining the wages and compensation of DSS's employees, including Plaintiffs, as well as establishing the schedules of its employees, and was responsible for maintaining employee records.

19.     The Individual Defendants participated in directing and supervising Plaintiffs' job

3

duties and responsibilities.

20. The Individual Defendants determined the manner in which Plaintiffs were to be paid and compensation they were to receive, if any, while employed by Defendants.

21. Kiewit and Shea exercised control over the Project and benefited directly from Plaintiffs' labor.

22. Plaintiffs and other workers complained to Kiewit's site managers regarding unpaid wages.

23. Despite actual knowledge of wage violations, Kiewit failed to take corrective action.

24. Kiewit and Shea had authority to control working conditions on the Project and maintained operational oversight.

25. As the general contractor on a construction project, Kiewit and Shea are jointly and severally liable for unpaid wages under NYLL §198-e.

26. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method and share control over the employees.

27. Defendants possessed substantial control over Plaintiffs' working conditions and over the policies and practices with respect to the employment and compensation of Plaintiffs.

28. Defendants dictated, controlled, implemented, and ratified wage-and-hour policies and all related employee compensation policies during Plaintiffs' employment

29. Defendants maintained a common policy and practice of, *inter alia*, not paying employees for all hours worked during their employment or otherwise notifying them of their rights under the law.

30. At all relevant times, Kiewit, Shea and DSS (the "Corporate Defendants") affected

4

commerce within the meaning of 29 U.S.C. §203(b) by producing goods for interstate commerce, or handling, selling, or working on goods or materials that have been moved in or produced for interstate commerce.

31.    Upon information and belief, the gross annual volume of sales made or business done by the Corporate Defendants was not less than $500,000.00.

32.    At all times relevant, Defendants were covered by the FLSA and NYLL.

33.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and NYLL.

## FACTUAL ALLEGATIONS

34.    DSS was retained by Kiewit to provide security services for certain projects where Kiewit was the general contractor for the facilities.

35.    Plaintiffs worked for Defendants as they had different construction sites for the Delaware Aqueduct project operated by the New York City Department of Environmental Protection.

36.    In their roles, Plaintiffs were employed as Unarmed Security Guards tasked with guarding construction and facility sites during assigned shifts provided to them by Defendants.

37.    In performing their jobs, Plaintiffs were primarily responsible for maintaining site logbooks issued by Kiewit on Kiewit's stationary.

38.    At the beginning of each shift, Plaintiffs would arrive at their assigned job sites and relieve the prior security guard on site.

39.    At times, Defendants' construction workers would arrive about an hour after Plaintiffs commenced their shifts, so the exchange between security guards were completed before workers began entering the sites.

40.     Throughout each shift, Plaintiffs were required to walk around the construction sites to insert entries into the logbooks documenting the condition of the sites and any significant events.

41.     If there were no issues, Plaintiffs would record that the site was clear.

42.     If any incidents occurred, Plaintiffs documented them, including, (a) employees attempting to enter without a valid identification badge, (b) employees not wearing the required safety equipment or proper work uniform, and (c) handle unauthorized visitors, deliveries, or any other security-related concerns.

43.     The logbooks also reflected when Plaintiffs inspected the shafts, confirmed that the construction sites were secure, and documented communications with, or visits from, representatives of the New York City Department of Environmental Protection

44.     In addition to maintaining the logbooks, Plaintiff monitored access to the property and ensured that only authorized personnel with proper identification and required safety equipment were permitted to enter the site.

**A.     Justin Barnhill**

45.     Justin commenced his employment in June 2024.

46.     During his employment, Justin worked at Shaft 6 Chelsea Pump Station, located in Wappinger Falls, Dutchess County.

47.     In exchange for his services, Justin was paid $15.00 per hour in cash, with no taxes or deductions being taken from his pay.

48.     Notably, at no time during his employment was Justin's wage rate increased to align with the minimum wages that applied to employees in Dutchess County, which rose to $15.50 in 2025 and then $16.00 in 2026.

49.    Despite being a W-4 employee of DSS, whenever Justin complained about him being improperly paid, the Individual Defendants would threaten him by stating that they would (illegally) misclassify him as an independent contractor for which he would receive a 1099 form.

50.    Specifically, when challenged by Justin, the Individual Defendants would respond with comments such as: "We haven't been taking taxes out since 2024, right?" and "You're going to be on the hook for all of these [taxes]" if W-2s are issued.

51.    In addition to failing to pay Justin proper minimum wages, overtime wages, and spread-of-hours pay, DSS was chronically late in paying his wages.

52.    Further, after Justin complained about unlawful pay practices and missing wages, Defendants reduced his shifts and work opportunities, thereby reducing his hours and compensation in retaliation for engaging in protected activity

53.    During his employment, Justin worked a schedule generally consisting of eight (8) hour shifts, which sometimes extended to sixteen (16) hours a day (i.e. he worked two (2) shifts on one day), initially working seven (7) days per week.

54.    One example showing Justin's denial of his wages can be gleaned from the entries he submitted on October 13, 2024.

55.    On October 13, 2024, Justin arrived as his first shift at 00:00 (12:00 a.m.) to 08:00 (8:00 a.m.), which time entries he included in the logbook.

56.    After being relieved from his shift from 08:00 (8:00 a.m.) to 16:00 (4:00 p.m.), Justin then worked that same day, October 13, 2024, from 16:00 (4:00 p.m.) to 00:00 (12:00 a.m.).

57.    This is an example of how Justin's shifts worked, with him working, for example, sixteen (16) hours on October 13, 2024 without receiving overtime compensation that week.

58.    The pay listed was always for a whole amount, which did not contain any indication

as to the hourly rate, overtime rate or hours worked.

59.    The hours mentioned above are (or should be) in Defendants' possession, including the logbooks containing the information to support the hours worked by Justin for which he was not properly compensated for all hours worked.

60.    The checks issued to Justin during his employment came from DSS and Lewis.

61.    As set forth above, during his employment, Justin complained to Defendants regarding underpayment of wages, late payment of wages, failure to pay minimum wage and overtime compensation, and other unlawful pay practices.

62.    Justin also raised concerns regarding these wage violations to representatives of Kiewit assigned to the project sites.

63.    Following Justin's complaints regarding his wages and working conditions, Defendants reduced his available shifts, decreased his hours, and otherwise subjected him to adverse employment actions.

64.    Defendants' actions were intended to discourage Justin (and similarly situated workers) from asserting rights protected under the FLSA and NYLL and to deter other employees from engaging in similar protected conduct.

65.    There is a direct causal connection between Justin's complaints concerning wage violations and Defendants' actions reducing his shifts and compensation.

**B.    Rodney Barnhill**

66.    Rodney commenced his employment in August 2024.

67.    During his employment, Rodney worked at the following sites: (a) Shaft 6, located in Wappinger Falls, Dutchess County; (b) Shaft 2A, located in the Town of Wawarsing near Kerhonkson in Ulster County; and (c) Shaft 5, located in the Town of Newburgh, Orange County.

8

68. The majority of Rodney's work was performed at the Kerhonkson location.

69. In exchange for his services, Rodney was generally paid $15.00 per hour in cash, with no taxes or deductions being taken from his pay.

70. Notably, at no time during his employment was Rodney's wage rate increased to align with the minimum wages that applied to employees in Dutchess, Ulster and Orange Counties, which rose to $15.50 in 2025 and then $16.00 in 2026.

71. In addition to not receiving proper minimum, overtime or spread of hours wages during his employment, DSS was chronically late in paying Rodney his wages.

72. During his employment, Rodney worked a schedule generally consisting of eight (8) hour daily shifts, which sometimes extended to twenty-four (24) hours a day (i.e. he worked four (4) shifts in a row).

73. For example, the logbook shows Rodney worked a full day for December 20, 2024, with no relief from 00:00 (12:00 a.m.) to 00:00 (12:00 a.m.), until being relieved on December 21, 2024.

74. This is an example of how Rodney's shifts worked, with him working, for example, twenty-four (24) hours on December 21, 2024 without receiving overtime compensation that week.

75. The pay listed was always for a whole amount, which did not contain any indication as to the hourly rate, overtime rate or hours worked.

76. The hours mentioned above are (or should be) in Defendants' possession, including the logbooks containing the information to support the hours worked by Rodney for which he was not properly compensated for all hours worked.

77. The payments issued to Rodney during his employment came from DSS, Lewis and Abiola.

9

**C.      Kiewit Involvement and Knowledge**

78.      As noted above, the general contractor on the sites was Kiewit.

79.      Kiewit's site managers, Matthew Higgins and Lisa Spencer, were aware of the issues between Justin and DSS, as he and his co-workers repeatedly complained to them regarding problems with their paychecks.

80.      Despite Kiewit being informed, no action was taken to address the situation.

81.      Furthermore, the logbooks that Plaintiffs were required to sign were on Kiewit stationery.

**D.      Wage Theft Prevention Act Violations**

82.      Throughout their employment, Defendants did not keep and maintain accurate time records for the hours Plaintiffs worked.

83.      Defendants also failed to provide Plaintiffs with an acknowledgment of their pay rates or complete and accurate paystubs as required by the NYLL.

84.      Because Defendants did not provide Plaintiffs with complete and accurate acknowledgments and paystubs, they were kept in the dark about how much they should have been paid.

85.      Had Defendants provided such acknowledgments and paystubs, Plaintiffs would have known that they were entitled to minimum wage and overtime compensation for hours they worked in excess of forty (40) each week and could have advocated for themselves to enforce their rights under federal, state and local laws.

86.      However, because Defendants did not provide Plaintiffs with complete and accurate documentation as required by the NYLL, Plaintiffs could not rectify the situation, resulting in the underpayment of their wages during their employment with Defendants.

10

87.    As a result of Defendants' failure to provide wage acknowledgments and statements, Plaintiffs have incurred tangible, downstream harm.

88.    On the grounds of equitable tolling, the statute of limitations for all claims asserted by Plaintiffs should be tolled due to the failure to provide appropriate and required notice of the law.

## COUNT ONE
### (Failure to Pay Minimum Wages – FLSA)

89.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

90.    The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or [are] employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. §207(a)(1).

91.    Defendants engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Complaint.

92.    Defendants were required to pay Plaintiffs at least the applicable minimum wage rates for all hours worked.

93.    Defendants failed to pay Plaintiffs the minimum wages to which they are entitled under the FLSA.

94.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional.

95.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

96.    Defendants have not made a good faith effort to comply with the FLSA with respect

11

to the compensation of Plaintiffs.

97.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

98.    As a result of Defendants' willful violations of the FLSA, Plaintiffs have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**COUNT TWO**
**(Failure to Pay Overtime Wages – FLSA)**

99.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

100.    The FLSA requires that employers pay all employees at least one and one-half times the employee's wage for all hours worked in excess of forty (40) during any workweek, unless they are exempt from coverage.

101.    During their employment, Plaintiffs were non-exempt employees of Defendants.

102.    During their employment, Plaintiffs regularly worked overtime, without receiving any premium pay for hours worked in excess of forty (40) per workweek.

103.    At all relevant times, Defendants willfully, regularly, repeatedly, and knowingly failed to pay Plaintiffs the required overtime wages to which they are entitled.

104.    As a result of Defendants' willful violations of the FLSA, Plaintiffs have suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## COUNT THREE
### (Failure to Pay Minimum Wages – NYLL)

105.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

106.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

107.    At all times relevant, Plaintiffs were employees of Defendants, and Defendants were employers of Plaintiffs, within the meaning of the NYLL §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

108.    Defendants failed to pay Plaintiffs the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

109.    Pursuant to the NYLL, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiffs the full minimum wage at a rate in New York State to the present, under the NYLL §§ 650 et seq. and the supporting New York State Department of Labor Regulations.

110.    Through their knowing or intentional failure to pay minimum hourly wages to Plaintiffs, Defendants willfully violated the NYLL, Article 19, §§650 et seq., and the supporting New York State Department of Labor Regulations.

111.    Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants his unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT FOUR
### (Failure to Pay Overtime Wages – NYLL)

112.    Plaintiffs reallege and incorporate by reference all allegations in all preceding

13

paragraphs.

113.  The NYLL requires that employers pay all employees at least one and one-half times the employees' wage for all hours worked in excess of forty (40) during any workweek, unless they are exempt from coverage.

114.  Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

115.  At all times relevant, Plaintiffs have been non-exempt employees of Defendants, and Defendants have been employers of Plaintiffs, within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

116.  Defendants have failed to pay Plaintiffs the overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

117.  Pursuant to the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiffs the unpaid overtime wages to the present, under the NYLL §§ 650 *et seq.* and the supporting New York State Department of Labor Regulations.

118.  Through their knowing or intentional failure to pay overtime wages to Plaintiffs, Defendants willfully violated the NYLL, Article 19, §§650 *et seq.*, and the supporting New York State Department of Labor Regulations.

119.  Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**COUNT FIVE**
**(Failure to Pay Spread of Hours – NYLL)**

120.  Plaintiff realleges and incorporates by reference all allegations in all preceding

paragraphs.

121.    During their employment, Plaintiffs would, at times, work a spread of more than ten (10) hours in a workday.

122.    Defendants willfully failed to compensate Plaintiffs with an extra hour's pay at the basic New York minimum hourly wage rate on days in which the length of their workday was more than ten (10) hours, as required by New York law.

123.    Through their knowing or intentional failure to pay Plaintiffs spread-of-hours pay, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

124.    Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid spread-of-hour wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and prejudgment and post-judgment interest.

**COUNT SIX**
**(General Contractor Liability – NYLL)**

125.    Plaintiffs reallege and incorporate by reference all previous paragraphs as if fully set forth herein.

126.    At all relevant times, Plaintiffs were employed by DSS a subcontractor performing work for the general contractors, Kiewit and Sheak.

127.    Under NYLL § 198-e, Kiewit and Shea are jointly and severally liable for the wage violations of DSS, including all unpaid wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and prejudgment and post-judgment interest.

**COUNT SEVEN**
**(Wage Notice Violations – NYLL)**

128.    Plaintiffs reallege and incorporate by reference all previous paragraphs as if fully

15

set forth herein.

129.    Defendants failed to furnish Plaintiffs with wage notices as required by NYLL §195(1), in English or in the language identified by each employee as their primary language, at the time of hiring and with any change in pay, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL §191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

130.    Due to Defendants' violations of NYLL §195(1), Plaintiffs are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiffs with proper wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL §198(1-b).

## COUNT EIGHT
### (Wage Statement Violations – NYLL)

131.    Plaintiffs reallege and incorporate by reference all previous paragraphs as if fully set forth herein.

132.    Defendants failed to furnish Plaintiffs with an accurate statement with every payment of wages as required by NYLL §195(3), listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net

wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

133.    Due to Defendants' violations of NYLL §195(3), Plaintiffs are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiffs with proper wage statements, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL §198(1-d).

## COUNT NINE
### (Retaliation – NYLL)

134.    Plaintiffs reallege and incorporate by reference all previous paragraphs as if fully set forth herein.

135.    NYLL §215 prohibits employers from discharging, threatening, penalizing, discriminating against, or retaliating against employees who complain about violations of the Labor Law.

136.    As set forth herein, Justin engaged in protected activity by repeatedly complaining to Defendants regarding unpaid wages, minimum wage violations, overtime violations, late wage payments, and other unlawful wage practices, which resulted in Defendants reducing Justin's shifts, reducing available work opportunities, reducing his hours, and otherwise taking adverse employment actions against him.

137.    Defendants' conduct would dissuade a reasonable worker from asserting rights protected under the NYLL.

138.    Defendants' retaliatory conduct was intentional, willful, and undertaken because Justin engaged in protected activity.

139.    As a direct and proximate result of Defendants' unlawful retaliation, Justin suffered damages, including lost wages and other economic losses.

17

140.    Pursuant to NYLL §215, Justin is entitled to recover all available relief, including lost compensation, liquidated damages, statutory damages, attorneys' fees, costs, injunctive relief, and such other relief as the Court deems just and proper.

### COUNT TEN
**(Retaliation – FLSA)**

141.    Plaintiffs reallege and incorporate by reference all previous paragraphs as if fully set forth herein.

142.    Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), prohibits employers from discharging or discriminating against employees because they have filed complaints or otherwise asserted rights protected by the FLSA.

143.    At all relevant times, Justin engaged in protected activity under the FLSA by complaining to Defendants regarding unpaid wages, minimum wage violations, overtime violations, late wage payments, unlawful payroll practices, and other wage-and-hour violations.

144.    Defendants were aware of Justin's protected complaints and opposition to the wage practices described herein.

145.    After Justin complained about Defendants' failure to comply with federal wage-and-hour laws, Defendants threatened Justin, reduced his available shifts, reduced his working hours, limited future work opportunities, and otherwise subjected him to adverse employment actions.

146.    As alleged above, Defendants specifically threatened Justin concerning tax-related consequences and misclassification after he challenged Defendants' unlawful pay practices.

147.    Such threats were intended to discourage Justin (and similarly situated employees) from asserting his statutory rights.

18

148.    There is a direct causal connection between Justin's protected activity and Defendants' adverse actions.

149.    Defendants' conduct was motivated, at least in part, by Justin's complaints regarding wage-and-hour violations.

150.    Defendants' retaliatory conduct was willful, deliberate, malicious, and undertaken with reckless disregard for Justin's rights under the FLSA.

151.    As a direct and proximate result of Defendants' unlawful retaliation, Justin sustained damages, including lost wages, lost work opportunities, emotional distress associated with the threats and retaliation, and other compensatory damages recoverable under the FLSA.

152.    Pursuant to 29 U.S.C. §§ 215(a)(3) and 216(b), Justin is entitled to all available remedies, including lost wages, back pay, front pay, liquidated damages, compensatory damages, equitable relief, reinstatement or front pay in lieu thereof, attorneys' fees, litigation costs, and such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action and claims with respect to which they have a right to a jury trial.

## BCL §630 / LLCL §609 NOTICE AND DEMAND

Pursuant to New York Business Corporation Law ("BCL") §630 and/or New York Limited Liability Company Law ("LLCL") §609, Plaintiffs hereby advise that they intend to hold the Corporate Defendants' top ten shareholders and/or members liable for the unpaid wages referenced herein.  Further, Plaintiffs demand that the Corporate Defendants permit an examination of their record of shareholders under BCL §624 so that liability may be imposed on its top ten shareholders for the unpaid wages referenced herein.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for relief as follows:

A.      Declaring that Defendants violated the FLSA and NYLL by failing to pay Plaintiffs their proper wages and failing to provide them with proper documentation as required under the law;

B.      Awarding Plaintiffs the amount of unpaid wages under the FLSA and/or the NYLL, including unpaid minimum wages, overtime wages and spread of hours;

C.      Awarding Plaintiffs liquidated damages in an amount equal to wages owed pursuant to 29 U.S.C. §216(b) and liquidated damages and other statutory remedies pursuant to the NYLL;

D.      Awarding Plaintiffs all legal and equitable relief available under NYLL §215 and 29 U.S.C. §§215(a)(3) and 216(b), including compensatory damages, back pay, front pay, liquidated damages, equitable relief, attorneys' fees, costs, and such other relief as the Court deems proper.

E.      Awarding pre- and post-judgment interest as permitted under the law;

F.      Awarding the costs of this action together with reasonable attorneys' fees; and

G.      Granting such other and further relief as this Court deems necessary and proper.

Dated: July 22, 2026
      Woodbury, New York       Respectfully submitted,
                                **LAW OFFICES OF YALE POLLACK, P.C.**

By: _____
                        Yale Pollack, Esq.
          17 Joyce Court
          Woodbury, New York 11797
          (516) 634-6340
          ypollack@yalepollacklaw.com
          *Attorneys for Plaintiffs*

20